## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION, | Civil Action No.  12-7080-JAP-LHG |
| Plaintiff, | **MOTION DATE:  JULY 1, 2013** |
| v. | |
| KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive, | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS KIRBY WESTHEIMER'S COUNTERCLAIMS AND FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

---

RIKER, DANZIG, SCHERER,
HYLAND & PERRETTI  LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

Of Counsel and On the Brief:
  Anthony J. Sylvester
  Jonathan P. Vuotto

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS............................................................................i

TABLE OF AUTHORITIES ................................................................iii

PRELIMINARY STATEMENT.............................................................1

FACTS............................................................................................ 2

    A.    The Construction Loan and Defendant's Default.................2

    B.    The Litigation and Defendant's Counterclaim.................4

LEGAL ARGUMENT........................................................................7

POINT I

DEFENDANT'S COUNTERCLAIMS SHOULD BE DISMISSED..........7

    A.    Applicable Standard for Motion to Dismiss......................7

    B.    The First, Third, Eighth & Ninth counts Must be Dismissed..8

    C.    Defendant's Second Count is Without Merit....................12

    D.    Defendant's Reformation Claim is Without Merit..............16

    E.    Defendant's Conversion Claim is Baseless.......................17

    F.    Defendant's Sixth Count Does Not State a
Cause of Action.......................................................19

    G.    Seventh Count: Unjust Enrichment................................20

    H.    Tenth Count: Specific Performance................................21

I.    Eleventh Count: Constructive Trust................................22

J.    Twelfth Count: *Respondeat Superior*............................23

K.    Thirteenth Count: Declaratory Relief............................23

POINT II

PLAINTIFF SHOULD BE GRANTED SUMMARY JUDGMENT.........24

CONCLUSION................................................................... 26

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)...................................................24

*In re Application of Busse,* 124 Ill. App. 3d 433,..................................................19, 20

*Ashcroft v. Iqbal,* 556 U.S. 662  (2009)....................................................................7, 9

*Assocs. Commercial Corp. v. Wallia,*
211 N.J. Super. 231 (App. Div. 1986)......................................................20

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007...............................................7, 9

*Berman v. Gurwicz,* 189 N.J.Super. 89 (N.J. Ch. 1981)............................................10

*Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942)......................................23

*Callano v. Oakwood Park Homes Corp.,* 91 N.J.Super 105 (App. Div. 1966)....................20

*Camden Trust Co. v. Handle,* 132 N.J. Eq. 97 (1942).................................................19

*Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83 (1993)............................................23

*Carter v. Reynolds,* 815 A.2d 460 (N.J.2003)..........................................................23

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).........................................................25

*Cherry Hill Partners at Vill. Place, L.L.C. v. Wachovia Bank, N.A.,*
2011 U.S. Dist. Lexis 70768 (D.N.J. June 30, 2011).....................................14

*City of Millville v. Rock,* 683 F.Supp. 2d 319 (D.N.J. 2010)....................................10, 11

*Commercial Ins. Co. of Newark v. Apgar,* 111 N.J. Super. 108 (Law Div. 1970).................18

*Cotter v. Newark Housing Authority,*
2010 U.S. Dist. Lexis 25349 (D.N.J. Mar. 17, 2010).....................................21

*D'Ippolito v. Castoro,* 51 N.J. 584 (1968)..............................................................22

*Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).....................................................7

*Flanigan v. Munson,* 175 N.J. 597 (2003)...............................................................22

*Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.,*
913 F.Supp. 837 (D.N.J. 1995)...................................................................14

*GE Bus Fin. Servs. v. Grove St. Realty Urban Renewal, L.L.C.,*
2011 U.S. Dist. Lexis 117042 (D.N.J. Oct. 11, 2011).........................................12

*Glenfed Fin. Corp. v. Penick Corp.,* 276 N.J. Super. 163 (App. Div. 1994).......................14

*Goldsmith v. Camden County Surrogate's Office,*
408 N.J.Super. 376 (App. Div. 2009)...........................................................20

*Graddy v. Deutsche Bank,* 2013 U.S. Dist. Lexis 41203 (D.N.J. Mar. 25, 2013)..............13, 16

*Great Falls Bank v. Pardo,* 263 N.J. Super. 388 (Ch. Div. 1993)..................................25

*Heake v. Atlantic Cas. Ins. Co.,* 15 N.J. 475 (1954).........................................16, 17

*Healy v. N.Y. Life Ins. Co.,* 860 F.2d 1209 (3d Cir. 1988)......................................25

*In re estate of Hirokazu Sano,*
 2011 N.J. Super. Unpub. Lexis 3049 (N.J. Super. Dec.13, 2011)...............................22

*Hunter v. Sterling Bank, Inc.,* 2011 U.S. Dist. Lexis 135968 (D.N.J. Nov. 28, 2011)..............13

*Investors Warranty of Am., Inc. v. B.W.E. Dev. L.L.C.,*
2010 U.S. Dist. Lexis 62543 (D.N.J. June 23, 2010)...........................................10

*Kroblin Refrigerated Xpress, inc. v. Pitterch,*
805 F.2d 96 (3d Cir. 1986)......................................................................22

*LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc.,*
340 N.J. Super. 155 (App. Div. 2001)...........................................................9

*Martinez v. John Hancock Mut. Life Ins. Co.,*
145 N.J. Super. 301 (App. Div. 1976)...........................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986).............................................................................25

*Millhurst Milling & Drying Co. v. Automobile Ins. Co.,*
31 N.J. Super. 424 (App. Div. 1954)............................................................17

*Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.,*
261 N.J. Super. 468 (Law Div. 1992)...........................................................20

*Neitzke v. William,* 490 U.S. 319 (1989)……………………………………………...7

*Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47 (3d Cir. 1988)……………...10, 12

*Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds,*
363 N.J. Super. 431 (App. Div. 2003)……………………………………….…………17

*Rowan v. City of Bayonne,* 474 Fed. Appx. 875 (3d Cir. 2012)……………………….23

*Siddons v. Cook,* 382 N.J. Super. 1 (App. Div. 2005)…………………………….……9

*Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396 (1997)……………….……………12, 13

*Soto v. Quicken Loans, Inc.,*
2010 U.S. Dist. Lexis 131913 (D.N.J. Dec. 14, 2010)…………………………………10

*Stevens v. Mobil Oil Corp.,* 412 F.Supp. 809 (E.D. Mich. 1976)……………………….19

*Stonebridge Bank v. Nita Props., LLC,*
2011 US. Dist. Lexis 9674 (D.N.J. Jan. 31, 2011)……………………………….……...25

*Sun Coast Merchandise Corp. v. Myron Corp.,*
393 N.J. Super. 55 (App. Div. 2007)……………………………………………17, 18

*Temp-Way Corp. v. Cont'l Bank,* 139 B.R. 299 (E.D. PA. 1992)………………………...10

*Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114 (2d Cir. 1994)…………………...19

*United Jersey Bank v. Kensey,* 306 N.J. Super. 540 (App. Div. 1997)……………….10, 11

*VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539 (1994)…………………………….……20

*Wade v. Kessler. Inst.,* 343 N.J. Super. 338 (App. Div. 2001)……………….…………13, 16

*Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir. 1982)………………………………...10

*Wilson v. Amerada Hess Corp.,* 168 N.J. 236 (2001)………………………………….13

**COURT RULES**

Fed. R. Civ. P. 12(b)(6)……………………………………………………….7

Fed. R. Civ. P. 56(c)…..……………………………………………..………24

## PRELIMINARY STATEMENT

Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation ("BANA"), by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("Plaintiff"), respectfully submits this memorandum of law in support of its motion to dismiss the Counterclaim of defendant Kirby Westheimer ("Defendant") and for summary judgment in favor of Plaintiff on its Cause of Action for Foreclosure of Mortgage.

This is a foreclosure action relating to a construction loan that Plaintiff gave to Defendant. Defendant defaulted on the loan and is either unwilling or unable to repay Plaintiff, and now appears to be solely interested in delaying Plaintiff until such time as he becomes either willing, able or compelled to pay off the loan. Therefore, Defendant filed a contesting Answer to Plaintiff's Verified Complaint, and included a Counterclaim with thirteen counts, all of which are clearly without merit and appear to be designed to postpone his inevitable liability under the loan.

Furthermore, Defendant has no valid defense to Plaintiff's action. There are no disputed issues of material fact in this matter regarding: (i) the relevant mortgage; (ii) the underlying note; or (iii) Defendant's defaults. Thus, Plaintiff has made a *prima facie* showing of its entitlement to judgment of foreclosure as a matter of law. Accordingly, Plaintiff respectfully submits that summary judgment is appropriate.

# FACTS

## A.    The Construction Loan And Defendant's Default

On or about September 15, 2008, BANA and Defendant entered into a Construction Loan Agreement, whereby, among other things, BANA agreed to make a construction loan to Defendant in the maximum principal amount of $1,500,000.00 (the "Loan").  (*See* Declaration of Jonathan P. Vuotto ("Vuotto Decl."), Ex. A, Verified Complaint ("Complaint"), ¶ 6; Ex. A.)   Under the Construction Loan Agreement, Defendant was to use the Loan proceeds to finance the construction of certain improvements (the "Project") to certain real property located at 210 Mercer Street, Princeton, New Jersey 08540 (the "Property"), in accordance with certain plans and specifications.  (*Id.*)  The Project was to be completed by March 31, 2010.  (*Id.*)

On or about September 15, 2008, to evidence his indebtedness to BANA, Defendant executed and delivered to BANA an Adjustable Rate Note (the "Note") in the principal amount of $1,500,000.00.  (Complaint, ¶ 8; Ex. B.)

To secure the performance of the Construction Loan Agreement and repayment of the Note, Defendant executed and delivered to BANA a certain mortgage (the "Mortgage") dated September 15, 2008, which, among other conditions, rights, duties and privileges as fully set forth therein, encumbers the Property.  (Complaint, ¶ 10; Ex. C.)  The Mortgage was duly recorded with the

Mercer County Clerk's Office at Book 10191, Page 0403, Control No. 200810060528, Inst. No. RD 2008 035182. (Complaint, ¶ 12; Ex. C.) The Construction Loan Agreement, Note and Mortgage shall be collectively referred to as the "Loan Documents."

Defendant defaulted on the Loan Documents because, among other reasons, he has failed to complete the Project in accordance with the terms of the Construction Loan Agreement. (Complaint, ¶ 14.)

On May 21, 2012, Plaintiff sent Defendant a letter advising him, among other things, that he failed to comply with the terms of the Loan Documents by failing to complete the Project, that accordingly, pursuant to the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53, et seq., Plaintiff provided him with a Notice of Intention to Foreclose, and that, if Defendant failed to cure his defaults by June 18, 2012, Plaintiff may take steps to terminate his ownership of the Property by commencing a foreclosure action. (Complaint, ¶ 15; Ex. D.) Despite Plaintiff's demands, Defendant has failed to cure all of his defaults under the Loan Documents. (Complaint, ¶ 17.)

As of November 12, 2012, Defendant owes the total amount of $1,234,024.20 under the Loan Documents, plus all attorneys' fees and costs incurred in connection with collecting the debt, and interest continues to accrue. (Complaint, ¶ 18.)

**B.     The Litigation And Defendant's Counterclaim**

Plaintiff filed its Verified Complaint in this action on November 15, 2012. (Vuotto Decl., Ex. A.)  Defendant filed his Answer, Affirmative Defenses and Counterclaim on February 15, 2013.  (Vuotto Decl., Ex. B.)

Defendant alleges[1] that his Counterclaim arises out of the purported negligence and otherwise purportedly improper manner and means by which BANA inspected and/or failed to inspect the Project as a precondition of its disbursement of the Loan proceeds to Defendant, including the Loan's administration.  (Counterclaim, ¶ 4.) Defendant alleges that BANA's purportedly negligent actions included its alleged repeated failures to properly review and analyze the extensive documentation provided on Defendant's behalf to BANA in connection with the disbursement of the Loan proceeds, and its alleged failure to realize and inform Defendant that the Project could not be timely finished in accordance with its estimated costs and completion date. (*Id.*)

Defendant further alleges that, as a material inducement for Defendant to agree to the Loan, BANA purportedly made repeated misrepresentations, assurances and promises to Defendant that BANA's purported agents were charged with the responsibility to administer, oversee, supervise and monitor the Loan, and in particular, assure compliance with and adherence to all Loan provisions and

---

[1] It should be noted that Defendant's pleading, unlike Plaintiff's, is not verified and thus he has not sworn to the truth or accuracy of the allegations contained therein.

BANA's practices and procedures.  (Counterclaim, ¶ 7.)  Defendant alleges that BANA's loan procedures included a requirement that a Construction Loan Draw Request Affidavit be submitted to BANA for its review, reflecting the amounts of labor and materials expended during the applicable construction time period, and that Project completion was proceeding timely, on schedule, and in line with its anticipated completion date.  (Counterclaim, ¶ 8.)

Defendant further alleges that, to induce Defendant to enter into the Loan, and in connection with the disbursement of the Loan proceeds, BANA's procedures included regular periodic site inspections of the Project and the Property.  (Counterclaim, ¶ 9.)  Defendant further alleges that BANA's purported representations and loan procedures were intended to "assure" Defendant that the Project was proceeding timely, on schedule, and towards its anticipated completion date in accordance with the estimated cost to complete.  (*Id.*)

Defendant alleges that, at all relevant times, including Defendant's determination to invest more than $1 million "of his own funds" into the Property as a precondition for BANA's funding the Loan, Defendant allegedly reasonably believed and relied upon BANA's purported representations that its loan procedures would act to safeguard his investment and as a means by which to ensure the timely completion of the Project "at or under its estimated cost." (Counterclaim, ¶ 11.)

Defendant alleges that, despite BANA's purported "obligations" to Defendant under the Loan Documents and the alleged representations made to Defendant, BANA purportedly negligently failed in the administration of the Loan, including but not limited to, reviewing certain Draw Affidavits and conducting inspections of the Property. (Counterclaim, ¶ 12.) Defendant further alleges that BANA was unaware of the "actual true stage and percentage of completion of the Project." (*Id.*) Defendant alleges that the Project eventually "ground to a complete halt and standstill" with the Property remaining uninhabitable and the Project "being reduced to a 'war zone,'" forcing Defendant "to move his residence to a cottage on the Property." (*Id.*)

Defendant alleges that, had BANA discharged its purported "duties owing" to Defendant, BANA would or should have known "each time a Draw Affidavit was submitted, that the Project was grossly underfunded and its anticipated completion date impossible to meet." (Counterclaim, ¶ 13.) Defendant further alleges that a competent visual inspection of the then ongoing status and condition of the Property would or should have fully informed BANA and made it aware that the Project's percentage of completion was seriously at variance from that reflected in the Draw Affidavits. (*Id.*)

Based on these and related factual allegations, Defendant asserts thirteen separate causes of action against Plaintiff. (Counterclaim, ¶¶ 71-122.)

# LEGAL ARGUMENT

## POINT I

## DEFENDANT'S COUNTERCLAIMS SHOULD BE DISMISSED

### A.    Applicable Standard For Motion To Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Rule 12(b)(6) authorizes the Court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989) (noting that Rule 12(b)(6) streamlines the litigation by dispensing with needless discovery and fact finding).

Federal courts sitting in diversity apply the relevant state substantive law of the state in which the Court sits. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

**B.**     <u>The First, Third, Eighth & Ninth Counts Must Be Dismissed</u>

The First, Third, Eighth and Ninth Counts of Defendant's Counterclaim plead negligence, which requires a duty to be owed from Plaintiff to Defendant that simply does not exist here. Therefore, these claims must be dismissed.

Defendant's Third Count alleges that Plaintiff was negligent in connection with the Project and the Loan's administration. Defendant's Eight Count alleges that Plaintiff negligently interfered with Defendant's "rights, entitlements and interest in and under the Loan and the" Property. Defendant's Ninth Count alleges that Plaintiff made negligent misrepresentations to Defendant "in connection with the negotiation and execution of the Loan Documents."

Defendant's First Count alleges that Plaintiff breached the Loan Documents, but, contrary to Defendant's characterization of his cause of action as based on purported "breaches of contract," all of Defendant's allegations clearly sound in negligence. Defendant alleges that Plaintiff breached the Loan Documents by: (i) failing to properly conduct inspections of the Property; (ii) failing to timely inform Defendant of, and concealing from him the results of, the Property inspections; (iii) failing to properly review information for the draw affidavits; (iv) failing to timely inform Defendant of, and concealing from him the results of, Plaintiff's analysis of the draw affidavits; (v) failing to properly disburse loan proceeds; (vi) failing to timely notify Defendant, and concealing from him, that there was a construction

cost deficiency; and (vii) requiring Defendant to invest over $1 million in the Project as a precondition giving the Loan.

These allegations are clearly negligence-based. Indeed, the purported "obligations" cited above are not contained in the Loan Documents, and Defendant does not even attempt to cite any particular provision of the Loan Documents that Plaintiff has purportedly breached. In evaluating whether Defendant has stated a plausible claim for relief, the Court is under no obligation to accept Defendant's "labels" or "legal conclusions" that Plaintiff has purportedly "breached the Loan Documents." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. "While legal conclusions can provide the framework of a complaint, they must be supported by <u>factual</u> allegations." *Iqbal*, 556 U.S. at 679 (emphasis added). Since Defendant's "breach of contract" claim is supported only by factual allegations of purportedly <u>negligent acts</u>, the claim should be evaluated as a negligence claim rather than a contract claim.

Under New Jersey law, a party alleging negligence must establish three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) the breach of that duty was the proximate cause of plaintiff's damages. *Siddons v. Cook*, 382 N.J. Super. 1, 13 (App. Div. 2005); *LaBracio Family P'ship, v. 1239 Roosevelt Ave., Inc.*, 340 N.J. Super. 155, 161 (App. Div. 2001).

Furthermore, under New Jersey law, there is a "general presumption that the 'relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest.'" *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553 (App. Div. 1997) (quoting *Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992); *see Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) (It "would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table.") (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 79 (2d Cir. 1982)); *City of Millville v. Rock*, 683 F. Supp. 2d 319, 330 (D.N.J. 2010).

This rule is subject to certain exceptions under "special circumstances." *See Soto v. Quicken Loans, Inc.*, 2010 U.S. Dist. LEXIS 131913, *22-23 (D.N.J. Dec. 14, 2010) (citing *Kensey*, 306 N.J. Super. at 554-55). Such a duty to disclose may arise in one of following three situations: (1) where a fiduciary relationship is legally extant, as in transactions between a principal and agent or an attorney and client; (2) where either party entering into the contract "expressly reposes" a trust and confidence in the other; or (3) where the transaction is "intrinsically fiduciary" in nature. *See Soto*, 2010 U.S. Dist. LEXIS 131913 at *22-23; *Investors Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, 2010 U.S. Dist. LEXIS 62543, *8 (D.N.J. June 23, 2010) (citing *Berman v. Gurwicz*, 189 N.J. Super. 89, 93-94 (N.J. Ch. 1981)); *Kensey*, 306 N.J. Super. at 554-55.

Under the second exception, where either party "expressly reposes" a trust and confidence in the other, "the situation envisioned is one in which the advantage taken of the plaintiff's ignorance is 'so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling.'" *Kensey*, 306 N.J. Super. at 554 (quoting Restatement (Second) of Torts § 551 (1977 & Supp.1997), Cmt. 1); *see Rock*, 683 F. Supp. 2d at 332.

Here, no duty from Plaintiff to Defendant exists by virtue of the Loan Documents; the relationship between Plaintiff and Defendant is lender-borrower and nothing more. Indeed, the Construction Loan Agreement specifically provides:

> Borrower-Lender Relationship. This Agreement is made on the basis of a borrower-lender relationship between Owner and LENDER. LENDER will not be considered to constitute a partner, agent or joint venturer of or with Owner or any other party associated with the construction of the Improvements or the ownership of the Property.

(Complaint, Ex. A, Construction Loan Agreement, Art. 7.8.)

Thus, Defendant's allegations that Plaintiff and Defendant "collectively shared and were proceeding upon a mutual and common interest . . . in completing the Project" is incorrect and contrary to the plain words of the Loan Documents.

Furthermore, no "special circumstances" sufficient to give rise to a duty from the lender to the borrower are either existing or alleged. Defendant sought

and received a construction loan from Plaintiff and has failed to comply with the terms of the Loan Documents. There is simply no basis for Defendant to make any form of negligence claim against Plaintiff, because Plaintiff has no duty to Defendant. *See Paradise Hotel*, 842 F.2d at 53; *Kensey*, 306 N.J. Super. at 552-53.

Moreover, Defendant's claims are clearly contradicted (and barred) by the very terms of the Construction Loan Agreement. See Verified Complaint, Ex. A, Construction Loan Agreement, Art. 2.2(h); Art. 2.3(e); Art. 2.5(d); Art. 3.3(b) & (c); Art. 7.8. Accordingly, Defendant's negligence claims are without merit and the First, Third, Eighth & Ninth Counts of the Counterclaim should be dismissed.

## C.   Defendant's Second Count Is Without Merit

The Second Count of Defendant's Counterclaim alleges that Plaintiff breached the implied covenant of good faith and fair dealing. This claim is without merit.

Under New Jersey law, "[i]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; which means that in every contract there exists an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 421 (1997) (internal citations omitted); *see GE Bus. Fin. Servs. v. Grove St. Realty Urban Renewal, L.L.C.*, 2011 U.S. Dist. LEXIS 117042, *14-16 (D.N.J. Oct. 11, 2011). This implied covenant

of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder*, 148 N.J. at 420 (citations omitted).

In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. *Wade v. Kessler. Inst.*, 343 N.J. Super. 338, 778 A.2d 580, 586 (App. Div. 2001); *see Graddy v. Deutsche Bank*, 2013 U.S. Dist. LEXIS 41203, *11-13 (D.N.J. Mar. 25, 2013).

"[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001).   In other words, proof of "bad motive or intention" is vital to an action for breach of the covenant of good faith and fair dealing. *Id.*; *see Hunter v. Sterling Bank, Inc.*, 2011 U.S. Dist. LEXIS 135968, *16-18 (D.N.J. Nov. 28, 2011).

Furthermore, "[t]he implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude

a party from exercising its express rights under such an agreement." *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995) (citing *Glenfed Fin. Corp. v. Penick Corp.*, 276 N.J. Super. 163, 647 A.2d 852, 858 (App. Div. 1994)); *see Cherry Hill Partners at Vill. Place, L.L.C. v. Wachovia Bank, N.A.*, 2011 U.S. Dist. LEXIS 70678, *17-19 (D.N.J. June 30, 2011).

Here, Defendant's Counterclaim does not allege facts that amount to (or even suggest) that Plaintiff breached the implied covenant of good faith and fair dealing. First, Defendant does not allege any "bad motive or intention" on the part of Plaintiff. At most, Defendant's allegations amount to a negligence claim. For example, with respect to the Draw Affidavits, Defendant alleges that "throughout the entire period which BANA received each of the Draw Affidavits and partially disbursed the Loan Proceeds to [Defendant], [BANA] relied upon and never questioned or raised any issue with [Defendant], Kirby or anyone else acting on [Defendant's] behalf, concerning either the date discrepancies appearing on the face page of the Draw Affidavits and elsewhere thereon, or the fact that each of the Draw Affidavits had been submitted based on the photocopies signature and acknowledgement of [Defendant] and the notary public, as applicable." (Counterclaim, ¶ 44.) Defendant concludes about the Draw Affidavits that "had BANA undertaken a careful review and analysis of each of the Draw Affidavits prior to making partial disbursements of the Loan Proceeds, it also would have

and/or should have realized that the percentage of completion of the Project, as measured against the anticipated completion date and construction costs expended to the dates of each of the Draw Affidavits, could never have been complied with or met." (Counterclaim, ¶ 60.)

Not only do these allegations make little sense, and not only do they fail to mention that Plaintiff had no obligation to do these things under the Loan Documents, they do not assert that Plaintiff acted in <u>bad faith</u> (nor do they explain how <u>Plaintiff caused Defendant damages</u> by these alleged actions).

With respect to the Property inspections, Defendant alleges that he "was never provided with a single copy of any Inspection report, despite having repeatedly asked BANA for same." (Counterclaim, ¶ 56.) Also, Defendant alleges that the agents conducting inspections of the Property "had no continuity as multiple 'inspectors' randomly and irregularly appeared at the Project for such purpose" and that "there never was one single individual charged with conducting the Inspections and who as a result of prior Inspections had any real and meaningful understanding and historical prospective [sic] of the pace of the Project." (Counterclaim, ¶ 57.) Defendant concludes about the inspections that had "BANA properly and competently conducted the Inspections . . . BANA would and/or should have informed [Defendant] that the stage or percentage of the Project's completion and estimated construction costs were not only significantly

unachievable but that steps needed to be immediately taken to rectify the situation." (Counterclaim, ¶ 67.) Again, not only did Plaintiff have no independent duty to Defendant or any obligation under the Loan Documents to (i) provide Defendant with any inspection report or (ii) use a "single inspector" for all of the inspections, these allegations, at most, amount to a negligence claim and fail to even suggest that Plaintiff acted with malice or improper motive to deprive Defendant of the "fruits" of the Loan Documents.

Accordingly, Defendant's Second Count fails to allege a claim upon which relief may be granted and therefore it should be dismissed. *See Graddy*, 2013 U.S. Dist. LEXIS 41203 at *11-13; *Wade*, 778 A.2d at 586.

## D. Defendant's Reformation Claim Is Without Merit

The Fourth Count of Defendant's Counterclaim alleges that the Loan Documents should be reformed to "reflect the mistaken underfunding of the Project." (Counterclaim, ¶86.) This claim fails as a matter of law.

Reformation is an equitable remedy that should only be granted where the moving party is able to show through clear and convincing proof that "there is mutual mistake or [] a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party." *Heake v. Atlantic Cas. Ins. Co.*, 15 N.J. 475, 481 (1954); *see Martinez v. John Hancock Mut. Life Ins. Co.*, 145 N.J. Super. 301, 312 (App. Div. 1976), *certif. denied*, 74 N.J. 253 (1977). Reformation

will not be granted on the grounds of mistake resulting from "the complaining party's own negligence." *Millhurst Milling & Drying Co. v. Automobile Ins. Co.*, 31 N.J. Super. 424, 434 (App. Div. 1954).

Here, Defendant's reformation claim fails because he has failed to allege any facts suggesting that Plaintiff engaged in fraud or unconscionable conduct. *Heake*, 15 N.J. at 481. In addition, Defendant is the party that was "solely responsible for selecting and retaining" a contractor for the Project, and Defendant accepted "full responsibility for selection of the Contractor, [and] the quality of his work." Construction Loan Agreement, Art. 3.3(a). Accordingly, Defendant cannot obtain reformation of the Loan Documents on the basis that Defendant retained a contractor that negligently performed the work, which resulted in Defendant incurring additional costs. The apparent mistakes made by Defendant in selecting a contractor who apparently could not finish the Project timely nor within budget is not Plaintiff's fault, and such allegations are not sufficient to sustain a reformation claim.

### E.   <u>Defendant's Conversion Claim Is Baseless</u>

Conversion "consists of the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights." *Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds*, 363 N.J. Super. 431, 440 (App. Div. 2003); *Sun Coast Merchandise Corp. v. Myron Corp.*,

393 N.J. Super. 55, 84 (App. Div. 2007); *Commercial Ins. Co. of Newark v. Apgar*, 111 N.J. Super. 108, 114-15 (Law Div.1970). Therefore, "the property allegedly converted 'must have belonged to the injured party.'" *Sun Coast*, 393 N.J. Super. at 84 (quoting *Apgar*, 111 N.J. Super. at 115).

Here, any loan proceeds not disbursed to Defendant never belonged to Defendant and therefore Plaintiff was incapable of "converting" or "misappropriating" such funds. Under the Construction Loan Agreement, Plaintiff had no obligation to disburse funds to Defendant unless Defendant satisfied certain conditions. (*See* Construction Loan Agreement, Art. 2.4.) Defendant admits, however, that Plaintiff did not refuse to disburse the remaining loan proceeds to Defendant until after Defendant had accrued a "Construction Cost Deficiency" and was in default of the Loan Documents. (Counterclaim, ¶¶ 65; 69.) Under the Construction Loan Agreement, Plaintiff had no obligation to disburse funds to Defendant in view of the Construction Cost Deficiency and Defendant's default. (*See* Construction Loan Agreement, Art. 2.4(a)(5) & (6).) Thus, the undisbursed loan proceeds were never Defendant's "property" and Defendant's conversion claim should be dismissed. *See Sun Coast*, 393 N.J. Super. at 84; *Apgar*, 111 N.J. Super. at 115.

### F.    Defendant's Sixth Count Does Not State A Cause Of Action

Defendant's "waste" claim simply has no basis in law.  At common law, waste was "'a spoil or destruction in houses, gardens, trees or other corporeal hereditaments, to the disherishon of him that hath the remainder or reversion in fee simple or fee-tail'" and could be asserted by landlords only against "the tenants of estates created by the law, as distinguished from those which came into being through act of the owner." *Camden Trust Co. v. Handle*, 132 N.J. Eq. 97, 98 (1942) (quoting 2 William Blackstone, Commentaries *281).  In the context of a mortgage relationship, under New Jersey law, "[v]olunatry or active waste impairing the sufficiency of the security is remediable" whereas "damages for permissive waste are not recoverable." *Id.* at 101-02 (internal citation omitted). Regardless, in every case the cause of action is one held by the mortgagee and not by the mortgagor. *Id.* (active waste "actionable as a positive, affirmative wrong injurious to the mortgagee's property"; permissive waste "not recoverable by the mortgagee") (emphasis added).  This also appears to be true in other jurisdictions. *See, e.g., Travelers ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 120 (2d Cir. 1994) ("Second, New York courts recognize a cause of action for waste by a mortgagee against a mortgagor who impairs the mortgage."); *Stevens v. Mobil Oil Corp.*, 412 F. Supp. 809, 814 (E.D. Mich. 1976) (discussing whether, under Michigan law, "nonpayment of taxes by mortgagor in possession constitutes waste"); *In re*

*Application of Busse*, 124 Ill. App. 3d 433, 441 (under Illinois law "[a] mortgagee has a right to his security unimpaired and therefore may maintain an action before breach of condition to recover damages in the nature of waste <u>against the mortgagor</u>. . . ."). Defendant, as a mortgagor, cannot sustain a cause of action for waste against his mortgagee and, therefore, this count should be dismissed.

**G.    Seventh Count: Unjust Enrichment**

"The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Assocs. Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (App. Div. 1966)). "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'" *County of Essex v. First Union Nat. Bank*, 373 N.J. Super. 543, 549-50 (App. Div. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376, 382 (App. Div. 2009) (quoting *Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 261 N.J. Super. 468, 478 (Law Div. 1992)).

Here, neither Plaintiff nor Defendant dispute the validity of the Loan Documents. Therefore, because there is a written set of contracts that control, Defendant's quasi-contractual claim is improper. Furthermore, there are no facts alleged by Defendant suggesting that Plaintiff was "unjustly" enriched by any amounts paid by Defendant to Plaintiff. All amounts paid to Plaintiff by Defendant were made under the Loan Documents, the validity of which Defendant does not dispute. Therefore, any benefit Plaintiff received from Defendant was in accordance with the parties' express and valid written agreements and thus not "unjust." Defendant's claim in this regard is defective as a matter of law.

## H.    Tenth Count: Specific Performance

Defendant's claim for specific performance fails because he has not alleged a plausible claim for breach of contract. "Specific performance may not stand as a claim independent from a breach of contract claim. Instead, specific performance is an equitable remedy that may be granted by a court of equity in its discretion, if there is no adequate remedy at law." *Cotter v. Newark Housing Authority*, 2010 U.S. Dist. LEXIS 25349, *13 (D.N.J. Mar. 17, 2010) (emphasis added). Because Defendant has not pled a viable breach of contract claim, the remedy of specific performance is not available.

Furthermore, even if Defendant could make out a breach of contract claim (which he cannot) specific performance would not be an appropriate remedy.

Specific performance is used where no adequate remedy at law exists. "When a court cannot arrive at a legal measure of damages with a sufficient degree of certainty, no adequate remedy at law exists." *Kroblin Refrigerated Xpress, Inc. v. Pitterch*, 805 F.2d 96, 103 (3d Cir. 1986). Here, Defendant alleges that if the Loan Documents are not enforced he will "have lost all monies, interest and other good and valuable consideration paid by him to BANA under the Loan Documents." (Counterclaim, at ¶ 110.) Such money damages can be remedied at law and, as such, specific performance would be an inappropriate remedy. Accordingly, this count should be dismissed.

## I.      **Eleventh Count: Constructive Trust**

A constructive trust is justified where "there was some wrongful act, usually, but not limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property." *D'Ippolito v. Castoro*, 51 N.J. 584, 588 (1968). It "is a powerful tool to be used only when the equities of a given case clearly warrant it." *Flanigan v. Munson*, 175 N.J. 597, 611 (2003). More importantly, as with specific performance, "[c]onstructive trust is a remedy, rather than a cause of action in itself." *In re estate of Hirokazu Sano*, 2011 N.J. Super. Unpub. LEXIS 3049, at *26 (N.J. Super. Dec. 13, 2011). Here, Defendant has not sufficiently pled any causes of action sounding in fraud or mistake. Accordingly, the constructive trust remedy is unavailable to Defendant.

### J.      Twelfth Count: *Respondeat Superior*

"[T]he doctrine of *respondeat superior* does not provide an independent cause of action under New Jersey law." *Rowan v. City of Bayonne*, 474 Fed. Appx. 875, 879 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds*, 815 A.2d 460 (N.J. 2003)). Generally, "the doctrine of respondeat superior recognizes a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees." *Carter*, 815 A.2d at 463. The doctrine is neither a cause of action nor a remedy and this count should be dismissed.

### K.      Thirteenth Count: Declaratory Relief

District Courts have discretion in determining whether or not to hear claims for declaratory relief, even where, as here, the court's jurisdiction over the matter is established. *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-96, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942)).

Here, we respectfully submit that this Court should decline to hear Defendant's claim for declaratory relief for two main reasons: (i) if Plaintiff is successful on its summary judgment motion, then Defendant's claim for declaratory relief will be moot; and (ii) Defendant's claim for declaratory relief is patently without merit. With respect to the latter point, Defendant seeks a

declaration of his "immediate entitlement to the balance of the Loan proceeds" (Counterclaim, at ¶ 122). As set forth above, under the Construction Loan Agreement, Plaintiff had no obligation to disburse funds to Defendant in view of the Construction Cost Deficiency and Defendant's default (*see* Construction Loan Agreement, Art. 2.4(a)(5) & (6)) and Defendant has admitted that Plaintiff did not "refuse" to disburse the remaining loan proceeds to Defendant until after Defendant had accrued a "Construction Cost Deficiency" and was in default of the Loan Documents. (Counterclaim, at ¶¶ 65; 69.) Accordingly, Defendant's Thirteenth Count should be dismissed.

## POINT II

## PLAINTIFF SHOULD BE GRANTED SUMMARY JUDGMENT

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a

verdict" for the non-moving party. *Healy v. N. Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In New Jersey, the three elements a lender must establish to prevail in a foreclosure action are: (1) the validity of the loan documents (the note and mortgage); (2) the alleged default in payment; and (3) the right to foreclose. *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394 (Ch. Div. 1993), *aff'd*, 273 N.J. Super. 542, 545 (App. Div. 1994); *see Stonebridge Bank v. Nita Props., LLC*, 2011 U.S. Dist. LEXIS 9674, *11-12 (D.N.J. Jan. 31, 2011).

Here, there are no genuine issues of material fact regarding the validity of the Loan Documents, Defendant's default, or Plaintiff's right to foreclose. First, Defendant admits the validity of the Loan Documents. (*See* Complaint, ¶¶ 6-12;

Defendant's Answer, ¶¶ 6-12.)  Second, Defendant admits that the Project was not completed in accordance with the parties' agreement (Counterclaim, at ¶¶ 58-60; 70), which is a clear default under the Loan Documents (*see* Construction Loan Agreement, Art. 6.1).   Third, Plaintiff's right to foreclose the Mortgage upon Defendant's default is not disputed.  (Complaint, at ¶ 10; Defendant's Answer, at ¶ 10; Verified Complaint, Ex. C at Sec. 22.)  Therefore, Plaintiff has established the elements necessary to prevail on its claim for foreclosure of the Mortgage.

Finally, Defendant's Affirmative Defenses are conclusory and unsupported by any facts.  Furthermore, the purported "defenses" allege the same theories as Defendant's Counterclaim and therefore they are deficient as a matter of law for the same reasons as set forth above and should be stricken.  Accordingly, we respectfully submit that summary judgment is appropriate.

## CONCLUSION

For the above reasons and any that Plaintiff may present on reply, we respectfully request that the Court enter an order dismissing Defendant's Counterclaim and granting Plaintiff summary judgment on its foreclosure claim.

<div style="margin-left: 40%;">

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI, LLP
Attorneys for Plaintiff


By:  /s/Jonathan P. Vuotto
Anthony J. Sylvester
Jonathan P. Vuotto
</div>

Dated:  June 6, 2013