NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BANK OF AMERICA, N.A., | : |
| Plaintiff, | : Civil Action No. 12-7080 (JAP) |
| v. | : **OPINION** |
| KIRBY WESTHEIMER *et al.*, | : |
| Defendants. | : |

PISANO, District Judge

The instant foreclosure action is brought by Bank of America, N.A. ("BA"), successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation (collectively "Plaintiff"), as the holder of a mortgage and note against the borrower, Kirby Westheimer ("Defendant"). Presently before the Court is Plaintiff's motion to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's motion for summary judgment on its mortgage foreclosure action [docket # 17]. For the following reasons, Plaintiff's motions are GRANTED.

I.  BACKGROUND

On September 15, 2008, Plaintiff and Defendant entered into a construction loan agreement (the "Loan"), and Defendant executed and delivered an Adjustable Rate Note (the "Note") in the principal amount of $1,500,000.00. Under the Loan Agreement, Defendant was to use the Loan proceeds to finance the construction of certain improvements (the "Project") to his residence located at 210 Mercer Street, Princeton, New Jersey (the "Residence" or "Property").

1

As security for the Note, Defendant executed and delivered to Plaintiff a mortgage (the "Mortgage"), which among other conditions, rights, duties and privileges set forth therein, encumbers the Residence. The Mortgage was duly recorded with the Mercer County Clerk's Office.

Plaintiff alleges that Westheimer defaulted on the Loan by failing to complete the Project in accordance with the Construction Loan Agreement, which provides that construction on the Project was to be completed no later than March 31, 2010. On May 21, 2012, the Project still had not been completed and Plaintiff sent Defendant a letter advising that unless Defendant complied with the terms of the Loan and completed the Project, Plaintiff may exercise its right to foreclose on the Property. Defendant failed to cure his default under the Loan and Plaintiff filed its Complaint in this action on November 15, 2012, alleging a single cause of action for foreclosure on the Property [docket # 1].

On February 13, 2013, Defendant filed his Answer, Affirmative Defenses and Counterclaim [docket # 8]. In sum and substance, Defendant alleges that Plaintiff was under an affirmative duty to ensure that construction of the Project was proceeding within the timeframe, budget, and specifications agreed to in the Loan, and that any default on the Loan resulted from Plaintiff's failure to conduct proper inspections of the Project.

In 2006, Defendant decided to undertake a substantial remodel to his Residence and hired a contractor to manage the Project. According to Defendant, from July 2007 to August 2008, he paid approximately $1,016,585.55 of personal funds towards the construction. In August 2008, it became apparent that he would need additional funds to complete the Project and he sought financing from Plaintiff.

Under the terms of the Loan, before Plaintiff would disburse finds to Defendant, Plaintiff required an inspection of the Project and a signed request for disbursement from Defendant. Defendant claims he believed the inspections were conducted to ensure that the Project was proceeding in a timely fashion, "on budget" and in compliance with the plans and specifications for the Project. According to Defendant, the inspection procedure was a "material element" in his decision to execute the Loan and he was under the impression that "[Plaintiff] and it Agents were expected to and would take appropriate affirmative action, including intervening when needed in order to assure the timely and 'on budget' completion of the Project." Counterclaim ¶ 50, 54. Defendant acknowledges that pursuant to the Loan Agreement, Plaintiff "is under no obligation to supervise construction of the Improvement," but argues that it was "clear, understood and apparent to [him] that [Plaintiff's] role in the Project transcended merely lending and disbursing the Loan proceeds to him." *Id.* at ¶ 27.

Defendant's Counterclaim is based largely on the assertion that Plaintiff's inspections of the property were inadequate. According to Defendant, Plaintiff sent several different individuals to conduct inspections of the Project. As a result of the "lack of continuity" in the inspections, Defendant claims that Plaintiff "turned a 'blind eye' toward the disruptions and delays" in construction of the Project.  According to Defendant, if Plaintiff had performed proper inspections of the Project, Plaintiff would have realized the Project was not proceeding within the anticipated timeframe or budget, and that Plaintiff, upon such realization, should have refused to disburse additional Loan proceeds until the deficiencies were remedied.

According to Defendant, around September 2011, Plaintiff informed him for the first time that he would have to personally contribute additional funds to the Project before any further proceeds would be disbursed. Defendant claims that although he complied with all of his

obligations under the Loan and never failed to make a payment, Plaintiff refused to disburse the remaining Loan balance of approximately $266,000.00. Defendant alleges that as a result of Plaintiff's failure to fulfill its purported obligations under the Loan, "the Project lies dormant" and the Residence is in "shambles."

Based on the alleged conduct of Plaintiff, Defendant's Counterclaim asserts thirteen causes of action for: (1) Plaintiff's breach of the Loan documents by failing to properly conduct inspections of the property or release the results of the inspections; (2) Plaintiff's breach of the implied covenant of good faith and fair dealing; (3) Plaintiff's negligence in administering the Loan and managing the Project; (4) reformation of the Loan Agreement based on the parties' material mistake of fact; (5) conversion and misappropriation by Plaintiff in withholding and failing to disburse the balance of the loan proceeds to Defendant; (6) waste, impairment and diminished value of the Residence; (7) unjust enrichment; (8) malicious and tortious interference with Defendant's prospective economic advantage; (9) Plaintiff's negligent misrepresentation of material facts in connection with the Loan Documents; (10) specific performance requiring the immediate disbursal of the remaining balance of the Loan; (11) imposition of a constructive trust, equitable recoupment, disgorgement and an accounting; (12) Plaintiff's liability under *respondeat superior* for its agents responsible for performing the inspections; and (13) declaratory relief.

## II.     DISCUSSION

Plaintiff now moves to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment on its mortgage foreclosure action. Defendant opposes these motions [docket # 42].

**A. Motion to Dismiss Defendant's Counterclaim Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). The factual allegations in the complaint must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss under Rule 12(6)(6), the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the plaintiff's claim. *Lum. v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004).

**1. Breach of Contract (Count I)**

In Count I, Westheimer claims that BA materially breached the Loan Documents by (1) failing to conduct and perform the inspections in a proper and appropriate manner, (2) concealing the results of the inspection reports, (3) failing to properly analyze the Draw Affidavits before disbursing the loan proceeds, (4) withholding the balance of the loan proceeds, (5) failing to perform Westheimer that there was a Construction Cost Deficiency, and (6) requiring Westheimer to invest over $1,000,000 as a precondition to the Loan. Westheimer further alleges that BA, in order to "protect itself from a downturn in the economy . . . arrange[d] for the creation on a non-material and 'technical' default under the Loan Documents." Counterclaim ¶ 72-73.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: (1) the existence of a valid contract between itself and the defendant; (2) that the defendant materially breached the contract; and (3) the plaintiff suffered damages as a result of the breach. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Coyle v. Englander's,* 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)).

There is no dispute between the parties regarding the validity of the Loan Documents, satisfying the first element for a breach of contract claim. However, the Court finds that Westheimer has failed to allege any breach of the Loan Documents by BA. Westheimer's Counterclaim is based largely on BA's purported "affirmative obligation . . . to conduct through its Agents regular, on-site Project related inspections of the Residence." Counterclaim ¶ 32. The Loan Agreement states that Plaintiff "or its agents will have the right at all times during the period of construction to enter upon the Property to conduct inspections . . . ." Complaint, Exhibit A at 3. Under the terms of the Loan Agreement, Plaintiff "is under no obligation to supervise the construction of the improvements . . . [and] inspection of the construction of the Improvements is for the sole purpose of protecting and preserving the security of [BA]." *Id.,* Exhibit A at 4.

Furthermore, the Loan Agreement clearly states that "[n]o inspection is to be construed as a representation or endorsement that the construction of the Improvements is in fact in compliance with Plans and Specifications, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by government authority." *Id.*

The provisions of the Loan Agreement run contrary to Westheimer's assertion that BA undertook an "affirmative obligation" to conduct regular inspections of the property and inform

6

Westheimer of the results of the inspections. The Loan Agreement clearly states that any inspection of the Project by Plaintiff was for BA's benefit and in no way constituted a representation or guarantee regarding the quality of the construction. Furthermore, there is no statement in the Loan Documents providing that Westheimer is entitled to the results of any inspection conducted by BA. Contrary to Defendant's argument, under the terms of the Loan Agreement, it was Defendant's duty to ensure that the construction was completed in a "first class and workmanlike manner" and in "full and strict compliance with the Plans and Specifications." *Id.*

With regard to Westheimer's claim that BA was obligated to withhold disbursement of the Loan proceeds based on the deficiencies in the construction, the Loan Agreements provides that BA "has the right to disapprove defective work and materials and may in its discretion, but is not obligated to, withhold disbursements until any defects are corrected . . . ." *Id*. Based on the terms of the Loan Documents, the Court finds that BA was under no obligation to conduct inspections, provide the results of any inspections to Westheimer, or to withhold Loan proceeds when deficiencies arose. Therefore, because Westheimer has failed to allege any action taken by BA which would constitute a breach of the Loan Documents, the Court finds that Westheimer has failed to state a claim for breach of contract. Accordingly, Count I of the Counterclaim is dismissed.

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Count II)

Count II asserts a violation of the covenant of good faith and fair dealing. "The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fields v. Thompson Printing Co., Inc.,* 363 F.3d 259, 271-72 (3d Cir. 2004) (internal

quotations and citations omitted). "[W]here the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." *Id.* Defendant does not allege any lack of clarity in the Loan Agreement. Instead, Defendant asserts that Plaintiff was obligated to perform additional duties in direct conflict with the terms of the Loan. Therefore, because the parties' contract is clear, the Court finds that Defendant has failed to state a claim for Plaintiff's breach of the implied covenant of good faith and fair dealing. Accordingly, Count II is dismissed.

### 3. Negligence (Count III)

In Count III, Defendant alleges that Plaintiff "was under a duty of care to [Defendant] to act reasonably in connection with the Loan" and Plaintiff "knowingly, recklessly, intentionally and/or willingly breached its duties owing to [Defendant]." Counterclaim ¶ 80-81. Defendant further claims that as a direct and proximate result of Plaintiff's purported negligence, he "has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm." *Id.* at ¶ 82.

A claim for negligence must demonstrate a duty, a breach of that duty, and foreseeable resulting injury proximately caused by the breach. *Anderson v. Sammy Redd and Assoc.,* 650 A.2d 376 (N.J. Super. Ct. App. Div. 1995). Here, the Court finds that Defendant has failed to state a claim for negligence because he has not established that Plaintiff owed him a duty of care. Under New Jersey law, the "mere existence of a mortgage agreement between plaintiff and defendant is insufficient, as a matter of law to create any duty of care owing from Defendant to Plaintiff." *Int'l Minerals & Mining Corp. v. Citicorp North Am., Inc.,* 736 F. Supp. 587, 597 (D.N.J. 1990) (citing *Washington Steel Corp. v. TW Corp.,* 602 F.2d 594, 599-600 (3d Cir. 1979) (overruled on other grounds by *Clark v. K-Mart Corp.,* 979 F.2d 965, 967-69 (3d Cir. 1992)).

There is "a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." *United Jersey Bank of Kensey,* 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

Westheimer contends that that BA's "utterly negligent and deficient" inspections and "reckless" conduct in allowing "loan proceeds to be disbursed for work that was incomplete or defective" created a duty of care. Opposition at 5. Although there is a general presumption that the relationship between a lender and a borrower is conducted at arms length, under New Jersey law, a duty may arise from transactions: (1) "involving fiduciary relationships such as a principal and agent or attorney and client," (2) "situations in which either one or each of the parties, in entering . . . [the] transaction, expressly reposes . . . a trust and confidence in the other . . . or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied" and (3) "contracts or transactions which in their essential nature, are intrinsically fiduciary and necessarily call[ ] for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Id.* at 44 (citations omitted).

Here, Westheimer claims BA owes a duty arising out of the second exception. Under the second exception, in which one of the parties "expressly reposes a trust or confidence in the other" a duty arises "where the lender encouraged the borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance." *Id.* at 45. However, this exception only creates a duty between a lender and a borrower in cases involving "egregious breaches of the lender's duty of good faith and fair dealing . . . [where] the bank actively encouraged the [borrower] to rely upon its advice and concealed its self-interest in promoting the transaction." *Id.* at 46. Westheimer alleges that BA's alleged conduct in "improperly

9

conduct[ing] inspections that were required prior to issuance of draws against the construction loan" constitutes "special circumstances" warranting a finding by the Court that BA breached a duty of care owed to Westheimer.

As previously noted by the Court, any inspections conducted by BA were for BA's benefit only, and under the clear terms of the Loan Agreement, BA was under no obligation to monitor the progress or quality of the construction, release the findings of any inspections to Westheimer, or to withhold Loan proceeds upon any finding of deficiency. All of the conduct alleged by Westheimer is well within BA's rights and obligations under the Loan Documents and falls far short of demonstrating any "egregious" action taken by BA. Therefore, because BA did not owe a duty of care to Westheimer, the Court finds that Westheimer has failed to state a claim for negligence. Accordingly, Count III is dismissed.

### 4. Reformation (Count IV)

In Count IV, Defendant alleges "a material mutual mistake of fact in that the Construction Costs were grossly underestimated and fell substantially short of the actual amount of monies needed to complete the project" and requests a reformation of the Loan "to reflect the mistaken underfunding of the Project." Counterclaim ¶ 84-86. "Reformation of a contract is an equitable remedy, traditionally available when there exists either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." 2011 WL 6341182, at *8 (N.J. Super. Ct. App. Div. Dec. 20, 2011) (citations omitted). Mutual mistake exists only when "both parties were laboring under the same misapprehension as to a particular essential fact." *Bonnco Petrol, Inc. v. Epstein,* 560 A.2d 655, 659 (N.J. 1989). "New Jersey law also requires for reformation for mutual mistake that the minds of the parties have met and reached a prior existing agreement, which the written document fails to express." *Id.*

Here, the Court finds that Defendant has failed to allege facts demonstrating a mutual mistake requiring reformation of the Loan. The cost of the construction provided for in the Loan Agreement is "estimated" and Article 2.2 of the Loan Agreement provides the appropriate remedy in the event that the lender "at any time during the term of the Loan . . . determines that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds." Complaint, Exhibit A at 1-2. The Loan Agreement clearly contemplates the possibility of a difference between the estimated and actual cost of construction and states that Defendant bears the responsibility for any additional costs in excess of those estimated in the Loan. Even if Defendant believed, in clear contradiction with the terms of the Loan Agreement, that Plaintiff guaranteed the final cost of the Project, there is no indication that any such mistake was mutual to both parties. Therefore, the Court finds that Plaintiff has failed to demonstrate that the parties "met and reached a prior existing agreement, which the [Loan Agreement] fails to express." *Bonnco,* 560 A.2d 655 at 659. Accordingly, Count IV is dismissed.

**5. Conversion and Misappropriation (Count V).**

In Count V, Defendant alleges that Plaintiff's failure to disburse the balance of the Loan Proceeds "constitutes unlawful conversion and misappropriation of monies to which he is entitled." Counterclaim ¶ 89. "[C]onversion consists of the wrongful exercise of dominion and control over property by another in a manner inconsistent with the owner's rights." *Commercial Ins. Co. of Newark v. Apgar,* 267 A.2d 559, 561-62 (N.J. Super. Ct. Law Div. 1970).

Here, Defendant's claim for conversion fails because Defendant has not demonstrated an ownership interest in the undisbursed Loan Proceeds. Under the terms of the Loan Agreement, several conditions must be met before the disbursement of Loan Proceeds to Defendant. Even assuming, *arguendo*, that Defendant met the requirements for regular disbursement of the Loan

Proceeds throughout the construction, Defendant has failed to allege satisfaction of the requirements for the "final disbursement of funds" under the Loan Agreement. *See* Complaint, Exhibit A at 3. Therefore, because Defendant has failed to demonstrate any entitlement to the remaining Loan Proceeds, his claim for conversion fails. Accordingly, Count V is dismissed.

### 6. Waste, Impairment and Diminished Value (Count VI)

In Count VI, Defendant claims that Plaintiff's administration of the Loan "has irreparably damaged the fair market value of the Residence, and has deprived [Defendant] of all his right, title and interest therein, as the Residence has been rendered and to date remains uninhabitable and in a state of great disrepair." Counterclaim ¶ 92.

As previously noted, under the clear terms of the Loan Agreement, Defendant accepted "full responsibility for selection of the Contractor and any subcontractors and all materials, supplies and equipment to be used in the construction" and Plaintiff was "under no obligation to supervise construction of the improvements." Complaint, Exhibit A at 4-5. Therefore, because it was Defendant's obligation to ensure that the construction would be completed "[i]n a first class and workmanlike manner" and "[i]n full and strict compliance with the Plans and Specifications," the Court finds that the responsibility for any deficiencies in the construction falls solely on Defendant. *Id.,* Exhibit A at 4. Accordingly, Count VI is dismissed.

### 7. Unjust Enrichment (Count VII)

In Count VII, Defendant alleges that Plaintiff was unjustly enriched by "the receipt of monies from [Defendant] on account of Inspection fees, interest, charges, costs incidental to the Loan and other good and valuable consideration paid by [Plaintiff]." Counterclaim ¶ 95.

To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege "(1) that defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by

the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford,* 677 A.2d 747 (N.J. 1996) (citation omitted). Unjust enrichment is a form of quasi-contractual liability that exists when the defendant has received a benefit from plaintiff that it would be inequitable for him to retain. *Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509, 519 (D.N.J. 2009). However, such liability is precluded where the subject matter of the claim is governed by an express contract, in which case the plaintiff is limited to contractual remedies. *Suburban Transfer Serv. v. Beech Holdings, Inc.,* 716 F.2d 220, 226-27 (3d Cir. 1983).

Here, the subject matter of Defendant's claim is governed by the Loan Documents, which precludes Defendant's allegation that Plaintiff was unjustly enriched. Furthermore, all of the benefits allegedly received by Plaintiff fall within the terms of the Parties' express and valid written agreement and Defendant has failed to plead facts demonstrating that any benefit received by Plaintiff is inequitable. Therefore, the Court finds that Defendant has failed to state a claim for unjust enrichment. Accordingly, Count VII is dismissed.

**8. Tortious Interference with Prospective Economic Benefit (Count VIII)**

In Count VIII, Defendant claims that Plaintiff tortuously interfered with his reasonable expectations regarding "the timely an 'on budget' completion of the Project." Counterclaim ¶ 98. To establish a claim for tortious interference with prospective economic advantage, a plaintiff must show: (1) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with "malice"; (3) a causal connection between the interference and the loss of prospective gain; and (4) actual damages. *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 563 A.2d 31 (N.J. 1989).

Here, Defendant has failed to allege any facts supporting the assertion that Plaintiff maliciously interfered with Defendant's reasonable expectations under the Loan Documents.

Accordingly, the Court finds that Defendant has failed to state a claim for tortious interference with his prospective economic benefit and Count VII is dismissed.

### 9. Negligent Misrepresentation of Material Facts (Count IX)

In Count IX, Westheimer claims that in connection with the negotiation and the execution of the Loan Documents, BA made materially false and misleading statements regarding BA's obligations under the Loan, and that without the alleged false statements Westheimer would not have agreed to enter into the Loan.

To prevail on a claim for negligent misrepresentation, a plaintiff must prove: (1) defendant negligently made a false communication of material fact; (2) that plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury. *See H. Rosenblum, Inc. v. Adler,* 461 A.2d 138 (N.J. 1983); *Gross v. Johnson & Johnson—Merck Consumer Pharm. Co.,* 696 A.2d 793 (N.J. Super. Ct. App. Div. 1997).

Here, the Court finds that Westheimer has failed to allege facts sufficient to establish that BA made any false statement regarding a fact material to the Loan. Although Westheimer claims that false and misleading statements were made to him by BA, he does not include the content or the context of any alleged statement. Therefore, because Westheimer has failed to show any allegedly false statement of material fact made to him by BA, the Court cannot determine whether any such statement was reasonably relied upon by Defendant and resulted in ascertainable damage to Westheimer. Accordingly, the Court finds that Defendant has failed to state a claim for negligent misrepresentation of a material fact and Count IX is dismissed.

### 10. Specific Performance (Count X)

In Count X, Defendant asks the Court to order specific performance of the Loan Documents and require BA "to immediately disburse the remaining balance of the Loan Proceeds in accordance with the Loan Documents." Counterclaim ¶ 109. Specific performance is an equitable remedy and not an independent cause of action and "may not stand as a claim, independent from a breach of contract claim." *Coter v. Newark Housing Auth.,* 2010 WL 1049930, at *4 (D.N.J. Mar. 17, 2010). As previously noted by the Court, Westheimer has failed to state a claim for breach of the Loan Documents by BA. Therefore, because Westheimer has failed to state a claim for breach of contract, his claim for specific performance of the Loan Documents also fails. Accordingly, Count X is dismissed.

### 11. Constructive Trust, Disgorgement and an Accounting (Count XI)

In Count XI, Westheimer claims that it "would be unjust and inequitable to permit [BA] to . . . benefit in any way from the unlawful use, misappropriation and conversion of the monies [Westheimer] has paid under the Loan Documents" and requests that BA be ordered to "forfeit and return" all consideration received from Westheimer. Counterclaim ¶ 113-14.

"A constructive trust is a measure through which a court of equity can prevent unjust enrichment and compel a restoration of property to a plaintiff that in good conscience does not belong to the defendant." *Dime Sav. Bank of New York v. Rietheimer,* 2009 WL 17871, at *7 (N.J. Super. Ct. App. Div. Jan 2, 2009) (citation omitted). Under New Jersey law, the imposition of a constructive trust requires proof of (1) a wrongful act, which (2) resulted in an unjust enrichment. *Id.*

Here, Westheimer has failed to demonstrate any wrongful act taken by BA in its execution or administration of the loan, and as previously noted by the Court, Westheimer has

15

also failed to show any the existence of any unjust enrichment. Therefore, the Court finds that Westheimer has failed to state a claim requiring the Court to impose a constructive trust. Accordingly, Count XI is dismissed.

### 12. *Respondeat Superior* (Count XII)

In Count XII, Westheimer asserts that BA is liable for the actions of its agents under the doctrine of *respondeat superior.* "[T]he doctrine of *respondeat superior* does not provide an independent cause of action under New Jersey law." *Rowan v. City of Bayonne,* 474 Fed. Appx. 875, 879 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds,* 815 A.2d 460 (N.J. 2003)). Therefore, because *respondeat superior* is a theory of liability and not an independent cause of action, Count XII is dismissed.

### 13. Declaratory Relief (Count XIII)

In Count XIII, Westheimer requests that the Court issue a declaratory judgment finding BA jointly and severally liable on the preceding counterclaims. Under the Declaratory Judgment Act, a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Companies v. Summy,* 234 F.3d 131, 133 (3d Cir. 2000). Although the Court's jurisdiction over this matter is undisputed, the Court notes that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies the subject matter jurisdiction prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995).

Based on the Court's finding that Westheimer's Counterclaim fails to state any claim against BA upon which relief could be granted, the Court finds that the issuance of a declaratory

16

judgment on the dismissed claims would not benefit the parties. Therefore, the Court, in its discretion, declines to issue a declaratory judgment at this juncture. Accordingly, Count XIII is dismissed.

**B. Motion for Summary Judgment**

Summary judgment is governed by Federal Rule of Civil Procedure 56, and is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Under Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the nonmoving party. *Healy v. N.Y. Life Ins. Co.,* 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The moving party bears the initial burden of proving that no genuine issue of material fact is in dispute. *Celotex,* 477 U.S. at 323. Whether or not a fact is material is determined according to the substantive law at issue. *Anderson,* 477 U.S. at 248. Once the moving party has carried this burden, the non-moving party must present evidence that a genuine fact issue compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.,* not just "some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Its opposition must rest on "facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

In establishing whether there is a disputed material fact, "[t]he nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson,* 447 U.S. at 255). The Court shall not "weigh the evidence and determine the truth of the matter," but need only determine whether a genuine issue necessitates a trial. *Anderson,* 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America,* 974 F.2d 1358, 1363 (3d Cir. 1992).

In New Jersey, in order to foreclose on a mortgage, a lender must establish that: (1) the mortgage and the loan documents are valid; (2) the mortgage loan is in default; and (3) it has a contractual right to foreclose in light of the default. *Pardo,* 622 A.2d at 1356. "The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." *Id.*

Under the first element, Plaintiff has established and Defendant does not dispute that Plaintiff executed and recorded both the Note and Mortgage. Turning to the second element, Defendant does not dispute that he defaulted on the Loan Documents, but argues that "any default was caused, created and worsened by Plaintiff's utter and complete failure to conduct reasonable inspections of the property." Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶ 9.

The Loan Agreement contains a list of situations constituting default by Defendant, one of which states that Defendant will be in default if he "fails to perform any obligation strictly according to the terms" of the Loan Agreement. Complaint, Exhibit A at 8. The Loan Agreement defines the Construction Period as ending on March 31, 2010, and provides that "[c]onstruction

18

of the Improvements will be completed no later than the end of the Construction Period, unless Borrower has requested an extension of the Construction Period . . . and Lender has approved such extension request." *Id.,* Exhibit A at 2. It is undisputed that construction was not completed by March 31, 2010, and Defendant did not receive an extension of the Construction Period. Therefore, because the construction was not completed by the deadline stated in the Loan Agreement, Defendant failed to perform his obligations under the terms of the Loan and is now in default.

While Defendant asserts that Plaintiff is at fault for any default on the Loan, the Court finds that under the terms of the Loan Document, Plaintiff was under no obligation to conduct inspections of the property. Furthermore, as previously discussed at length, any inspections performed by Plaintiff were solely for Plaintiff's benefit and Plaintiff made no guarantee or representation as to the quality or progress of the construction. Accordingly, the Court finds that Defendant's claim that the default was caused by Plaintiff is without merit. Therefore, because Defendant failed to satisfy his obligations under the Loan, the Court finds that Defendant is in default. Finally, the parties do not dispute that in the event of default, Plaintiff has a contractual right under the Loan Documents to foreclose on the Residence.

Therefore, because the undisputed facts establish: (1) that the mortgage and loan documents are valid, (2) that mortgage loan is in default, and (3) that BA has a contractual right to foreclose in the event of default, the Court finds that Defendant has failed to demonstrate any genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court grants Plaintiff's motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's Counterclaim and Plaintiff's motion for summary judgment on the Complaint [docket # 17] are GRANTED. An appropriate Order accompanies this Opinion.

Date: February 28, 2014  /s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge