# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact PHH MORTGAGE CORPORATION, | Case No. 12-cv-07080-JAP-LHG |
| Plaintiff, | |
| vs. | Civil Action |
| KIRBY WESTHEIMER, | |
| Defendant. | |

---

## DEFENDANT, KIRBY WESTHEIMER'S BRIEF IN SUPPORT OF HIS MOTION TO VACATE THIS COURT'S ORDER DISMISSING DEFENDANT'S COUNTERCLAIMS AND GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S FORECLOSURE COMPLAINT

---

LUM, DRASCO & POSITAN LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068-1049
(973) 403-9000
Attorney for Defendant, Kirby Westheimer

PAUL A. SANDARS, III
KEVIN J. O'CONNOR
  Of Counsel and On the Brief

ELAINE R. CEDRONE
  On the Brief

517976_1

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ......................................................................... ii

PRELIMINARY STATEMENT ............................................................ 1

SUMMARY OF ARGUMENT ............................................................. 1

STATEMENT OF FACTS ................................................................... 6

 A. Construction Loan Agreement with BOA .................................6

 B. Inspections and Disbursement of Loan Proceeds......................9

 C. Foreclosure Litigation and Order Dismissing
  Westheimer's Counterclaims and Entering Summary
  Judgment in Favor of BOA ........................................ 10

 D. Receipt of Inspection Reports Revealing BOA
  Prematurely Paid Out Loan Proceeds ...................................... 12

LEGAL ARGUMENT ......................................................................... 15

POINT I ............................................................................................... 15

 WESTHEIMER SATISFIES THE STANDARD UNDER FED. R.
 CIV. P. 60(B)(2) FOR RELIEF FROM AN ORDER ON THE
 BASIS OF NEWLY DISCOVERED EVIDENCE. ............................... 15

 A. The Inspection Reports Are Material To Westheimer's
  Counterclaims And Would Have Likely Prevented This
  Court From Dismissing Same. ................................................ 16

 B. The Inspection Reports Are Material To Westheimer's
  Defense To The Foreclosure Complaint And Would
  Have Likely Prevented Entry Of Summary Judgment. ........... 20

CONCLUSION .................................................................................... 23

i

# TABLE OF CITATIONS

**PAGE**

**Cases**

Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) ................................................ 15

Compass Tech., Inc. v. Tseng Labs., Inc., 71 F.3d 1125, 1130 (3d Cir.
    1995)........................................................................................................... 15

Great Falls Bank v. Pardo, 263 N.J. Super. 388 (Ch. Div. 1993) aff'd, 273
    N.J. Super. 542 (App. Div. 1994) ....................................................... 20

In re Mullarkey, 536 F.3d 215, 230 (3d Cir. 2008)........................................... 21, 22

Klein v. First Edina Nat'l Bank, 293 Minn. 418, 422 196 N.W.2d 619, 623
    (1972) ......................................................................................................... 19

Parker v. Columbia Bank, 91 Md. App. 346, 369, 604 A.2d 521, 532-33
    (Md. Ct. App.) ........................................................................................ 19

Patetta v. Wells Fargo Bank, NA, 2010 WL 1931256, at *11 (D.N.J. May
    13, 2010)..................................................................................................... 21, 22

United Jersey Bank v. Kensey, 306 N.J. Super. 540, 553 (App. Div. 1997) ... 17, 19

**Other Authorities**

Restatement (Second) of Torts §551 (1977 & Supp. 1977)................................... 17

Restatement (Second) of Torts §551, Subsection (2)............................................ 17

Scott T. Tross, New Jersey Foreclosure Law and Practice, §1 at 162-165
    (2001) ......................................................................................................... 20

**Rules**

Fed. R. Civ. P. 59(b) ........................................................................... 3, 4, 15, 16

Fed. R. Civ. P. 60(b) ........................................................................... 15, 20, 22

Fed. R. Civ. P. 60(b)(2) ............................................................................. passim

N.J. Ct. R. 4:64-5 ................................................................................................ 20

## PRELIMINARY STATEMENT

Defendant, Kirby Westheimer ("Defendant" or "Westheimer") submits this brief in support of his Motion pursuant to Fed. R. Civ. P. 60(b)(2) for relief from this Court's February 28, 2014 Order granting Summary Judgment in favor of Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("Plaintiff" or "BOA") on its foreclosure Complaint, and granting its Motion to Dismiss and dismissing Defendant's Counterclaims.

## SUMMARY OF ARGUMENT

Westheimer and BOA entered into a Construction Loan Agreement on September 15, 2008 in the amount of $1,500,000 in order to assist with funding for the renovation of his historic home in Princeton, New Jersey. The Construction Loan Agreement provided that before BOA would distribute any of the loan proceeds, Westheimer was required to fund the difference between the loan proceeds and the total construction costs, which meant that Westheimer was required to personally fund over $1,000,000 toward the project before BOA paid anything toward the loan. The Agreement also provided that if BOA determined that the actual cost to complete the construction project "may or will" exceed $2,567,123, Westheimer was to fund such excess cost before BOA made any

517976

disbursement or further disbursement of the loan proceeds.

The Construction Loan Agreement further provided that BOA could conduct inspections of the project, and could withhold funds on the basis that the inspections were unsatisfactory. Despite Westheimer's frequent requests, BOA refused to relinquish the reports from BOA's inspections of his property during the course of construction. After BOA commenced this foreclosure action, Westheimer's counsel repeatedly requested the inspection reports, but BOA refused to provide such reports. On or about October 15, 2014, after this Court entered its February 28, 2014 Order dismissing Westheimer's Counterclaims and granting summary judgment as to Plaintiff's Complaint, Westheimer finally received the inspection reports in connection with his litigation in the Superior Court of New Jersey against the various professionals and contractors on the construction project.

The inspection reports reveal that BOA prematurely disbursed the proceeds of the loan even though these reports reflected that the value of the completed work on the construction project and the $1,500,000 in loan proceeds were insufficient to complete the construction project. By prematurely funding the loan in direct contravention of the terms of the Construction Loan Agreement, BOA essentially ensured that Westheimer would be unable to complete the construction

project on budget or on time.

Westheimer now seeks relief from this Court's February 28, 2014 Order under Fed. R. Civ. P. 60(b)(2), which allows a Court to relieve a party from a final order on the basis of  "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." These inspection reports satisfy the standard under Fed. R. Civ. P. 60(b)(2) in that they are material and not merely cumulative, could not have been discovered before this Court's decision on Plaintiff's Motions through the exercise of reasonable diligence, and would probably have changed the decision on Plaintiff's Motions.

Westheimer could not have obtained the inspection reports within the time limits of Fed. R. Civ. P. 59(b), or within twenty-eight days after entry of the February 28, 2014 Order. Despite Westheimer's frequent requests, BOA refused to relinquish the reports from BOA's inspections of his property during the course of construction. Additionally, once litigation had commenced, Westheimer's counsel repeatedly requested that BOA provide the inspection reports, but once again, BOA refused to provide such reports. No discovery was conducted before this Court entered its Order dismissing Westheimer's Counterclaims and granting summary judgment on Plaintiff's Complaint. Westheimer finally received the inspection reports on or about October 15, 2014 from other parties involved in a

State Court litigation involving the construction project. Accordingly, it is clear that the inspection reports could not have been obtained through due diligence within the time frame set forth in <u>Fed. R. Civ. P.</u> 59(b).

Further, the inspection reports are material to Westheimer's Counterclaims and had Westheimer been able to submit such reports in opposition to BOA's Motion to Dismiss, this Court would likely have denied the Motion. The reports reveal that BOA had the unique knowledge that only about fourteen percent of the construction project had been funded despite Westheimer's understanding that his $1,067,123 investment into the project constituted over forty percent of the total construction costs. This is precisely the type of special circumstance on which New Jersey courts impose a fiduciary duty upon a lender toward a borrower.

The inspection reports are also material to Westheimer's defenses to the underlying foreclosure Complaint, and had the Court reviewed such documents, it would not have entered summary judgment in favor of BOA. By failing to demand that Westheimer fund the excess amount needed to complete the construction project before paying out the loan proceeds, BOA breached the Construction Loan Agreement and also ensured that Westheimer could not complete the construction project on time and would default under the Agreement. The inspection reports revealing Plaintiff's breach would have clearly changed the Court's decision on

the Summary Judgment Motion, as the causes of action in Westheimer's Counterclaim are "germane" under applicable New Jersey case law.

Accordingly, for the reasons discussed in further detail below, Westheimer's Motion under Fed. R. Civ. P. 60(b)(2) must be granted.

## STATEMENT OF FACTS

Westheimer is the owner of a home located at 210 Mercer Street, Princeton, New Jersey (the "Property"). (Declaration of Kirby Westheimer, dated May 22, 2015 ("Westheimer Decl."), ¶ 3.) The house is a well-known landmark in Princeton and one of the historically significant homes in Princeton.

In 2006, Westheimer decided to undertake a construction project to make substantial structural alterations, additions and modifications to his home (the "Project"). (Westheimer Decl., ¶ 4.) Westheimer is a seventy-seven year old retiree who has never had prior experience with construction projects and financing. He met with and engaged several professionals and contractors to provide services, labor and materials for the project. Stephen Rhoads, LLC ("Rhoads") was hired to perform professional design services and to serve as construction manager for the project. (Id., ¶ 4.)

### A.   Construction Loan Agreement with BOA

In June 2008, it became apparent to Defendant and Rhoads that additional funding would be necessary to complete the Project and Westheimer sought financing from BOA for completion of the Project through a construction loan. (Id., ¶ 5.) After disbursement of the proceeds, the construction loan would automatically convert to permanent financing. (Id., ¶ 6.) As such, in the spring of

2008 through September 2008, Westheimer had communications and meetings with BOA employees and representatives to negotiate the terms and conditions of the construction loan. (<u>Id.</u>, ¶ 7.) During these discussions, Westheimer advised BOA that the estimated cost of the Project was approximately $2.5 million, towards which he had already paid more than $1.0 million from his personal funds. (<u>Ibid.</u>)

On September 15, 2008, Westheimer entered into a Construction Loan Agreement with BOA as the Lender.  (<u>Exhibit A</u>,[1] Agreement dated September 15, 2008 (the "Agreement").)  The aggregate principal amount of the Loan was $1,500,000 and the construction was to be completed by March 31, 2010 if Westheimer did not request and BOA did not agree to an extension of the Loan. (<u>Exhibit A</u>, Agreement, Article 2.1(b).)  Specifically, Article 2.1(b) of the Agreement provided "[c]onstruction of the Improvements will be completed no later than the end of the Construction Period, unless Borrower has requested an extension of the Construction Period, in accordance with the Security Documents, and Lender has approved such extension request," with the "Construction Period" defined in Article 1 as the period ending on March 31, 2010. (<u>Exhibit A</u>,

---

[1]Hereinafter, all references to lettered exhibits refer to the documents attached to the Certification of Paul A. Sandars, III, Esq., dated August 14, 2015 ("Sandars Cert."), submitted herewith.

 Agreement, Article 2.1(b), Article 1.)

Article 2.2(a) of the Agreement provided that before BOA would disburse any loan proceeds, Westheimer was required to fund the "Cost Balance," defined in the Agreement as the difference between the "Loan Proceeds" and the "Construction Costs." (Exhibit A, Agreement, Article 2.1(a), Article 1.) The "Construction Costs" were defined in Article 1 of the Agreement as "the estimated cost of the Improvements of $2,567,123.00, as provided in the Construction Contract."  (Exhibit A, Agreement, Article 1.) The "Loan Proceeds" were defined as "the net funds available for disbursement as proceeds of the Loan to finance the construction of the Improvements after payment of any applicable closing costs and related expenses." (Exhibit A, Agreement, Article 1.) Pursuant to Article 2.2(c) of the Agreement, "[o]wner represents and warrants to LENDER that the Loan Proceeds and the funds representing the Cost Balance, if any, will be sufficient to pay in full the cost of the construction of the Improvements." (Exhibit A, Agreement, Article 2.2(c).) Finally, Article 2.2(d) of the Agreement provided:

> At any time during the term of the loan, LENDER may determine that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, if any. In that event, Owner **will** fund such excess cost prior to any disbursement or further disbursement being made by LENDER. In the alternative, Owner will, upon demand of LENDER, deliver the amount of such excess cost (the "Construction Cost Deficiency") to LENDER.

[Exhibit A, Agreement, Article 2.2(d)) (emphasis added).]

The difference between the "Construction Costs" of $2,567,123 and the "Loan Proceeds" of $1,500,000 is $1,067,123. In other words, before the loan payment was triggered, Westheimer was to fund $1,067,123 of the project costs, or forty percent (40%) of the total construction costs of $2,567,123. If, during the term of the loan, BOA determined that the actual cost to complete the construction "may or will" exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, Article 2.2(d) of the Agreement required Westheimer to "fund such excess cost prior to any disbursement or further disbursement being made by [Merrill Lynch Credit Corporation.]"  (Exhibit A, Agreement, Article 2.2(d).)

### B.    Inspections and Disbursement of Loan Proceeds

The Agreement also provided a system governing the disbursement of the Loan proceeds. Article 2.4 of the Agreement provided that the "Lender will have no obligation to disburse funds unless . . . (5) Owner has funded any Cost Balance, or pursuant to demand by LENDER, LENDER has received any required Cost Balance or Construction Cost Deficiency." (Exhibit A, Agreement, Article 2.4(a)(5).) Additionally, payment of the Loan proceeds also required that Westheimer delivered to BOA a signed request for disbursement, (Exhibit A, Agreement, Article 2.4(a)(1)), and that the lender had "conducted such inspections

as it may require, and the results of the inspections are satisfactory to LENDER," (<u>Exhibit A</u>, Agreement, Article 2.4(a)(4).)

Pursuant to those provisions, BOA conducted regular inspections of the Project. Initially, the inspections were conducted by Lenders Choice Network ("LCN"), but in October 2010, Trinity Inspection Services, LLC ("Trinity Inspection") was substituted as the inspector for the Project. (Westheimer Decl., ¶ 19.) However, BOA never provided Westheimer with copies of the inspection reports despite his repeated requests (<u>ibid.</u>), and it was later revealed that despite LCN's routine inspections, the work on the Project was not completed according to the NJUCC, the International Residential Code ("IRC"), and construction industry standards for good workmanship, was riddled with unresolved errors, omissions, and violations of the building code, and was generally defective. Indeed, Westheimer was compelled to file a lawsuit in the Superior Court of New Jersey against the various professionals, contractors, and subcontractors working on the Project, which litigation is still ongoing.  (Westheimer Decl., ¶ 20.)

### C. Foreclosure Litigation and Order Dismissing Westheimer's Counterclaims and Entering Summary Judgment in Favor of BOA

On November 14, 2012, BOA filed a Complaint seeking foreclosure of the Property based upon the alleged "default" under the Loan Documents arising from

517976

10

Westheimer's alleged failure "to complete the improvements to the property in accordance with the Construction Loan Agreement." (Exhibit B, Verified Complaint, filed November 14, 2012 (hereinafter, the "Complaint"), ¶ 14.)  On February 15, 2013, Westheimer filed an Answer, Affirmative Defenses and Counterclaims. (Exhibit C, Answer, filed February 15, 2013 (hereinafter, the "Answer".)) The basis of the Counterclaims was BOA's gross negligence in inspecting and/or failing to inspect the Property before authorizing disbursements under the construction loan which was secured by the mortgage at issue.

After litigation had commenced, this Firm repeatedly requested copies of BOA's inspection reports from Plaintiff's counsel, but these reports were never provided. (Sandars Cert., ¶ 3.) Prior to any discovery being conducted, BOA filed a Motion to Dismiss Westheimer's Counterclaims as well as a Motion for Summary Judgment on the foreclosure Complaint. (Id., ¶ 4.) On February 28, 2014, the Court entered an Order and Opinion granting BOA's Motion for Summary Judgment as well as its Motion to Dismiss Westheimer's Counterclaims. (Exhibit D, Order entered on February 28, 2014 Granting Plaintiff's Motion to Dismiss Counterclaim and Entering Summary Judgment on Complaint (hereinafter, "Order"); Exhibit E, Opinion by Hon. Joel A. Pisano, U.S.D.J., entered February 28, 2014 (hereinafter, "Opinion")). This decision is currently on

appeal with the Third Circuit.

**D.      Receipt of Inspection Reports Revealing BOA Prematurely Paid Out Loan Proceeds**

On October 15, 2014, after this Court entered its Order dismissing Westheimer's Counterclaims and granting summary judgment as to Plaintiff's Complaint, Westheimer finally received copies of the inspection reports in connection with his action pending in the Superior Court of New Jersey. These reports reveal that BOA prematurely disbursed Loan proceeds even though LCN's inspection reports reflected that the value of the completed work on the Project and the Loan Proceeds were insufficient to complete the Project, essentially insuring that Westheimer would be unable to complete the Project on budget or on time.

Specifically, LCN's September 16, 2008 report reveals that there was only $383,254.52 in completed work on the Project, rather than the $1,067,123 actually paid out by Westheimer. (Exhibit F, Report dated September 16, 2008 by Lenders Choice Network (hereinafter, "September 16, 2008 Report"), pages Bates-stamped CHPAVING 118-119.) The September 16, 2008 Report also listed the total construction budget as $1,966,069.13 rather than the $2,567,123 set forth in the Agreement. Accordingly, although the September 16, 2008 Report provided that the Project was 19.49% complete, the percentage of completion as of September

16, 2008 was actually 14.93%. This incorrect construction budget was used in each of LCN's sixteen inspection reports, with the correct budget amount finally reflected in the first report authored by the new inspection company, Trinity Inspection. (Exhibit G, Report dated October 15, 2010 by Trinity Inspection, pages Bates-stamped CHPAVING 1019-1023.)

Although Article 2.2(d) of the Agreement provided that if BOA determined that "the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance" Westheimer must fund such excess prior to any disbursement by BOA, BOA nonetheless approved and paid Westheimer's first disbursement request of $97,753.21 on or about September 24, 2008.  (Exhibit H, Advance Approval/Sign Off, dated September 24, 2008, page Bates-stamped 92; Exhibit I, Cost Breakdown Detail, dated September 24, 2008, page Bates-stamped CHPAVING 107.)

Westheimer has now filed the within Motion under Fed. R. Civ. P. 60(b)(2) for relief from this Court's February 28, 2014 Order on the basis of the "newly discovered evidence" of the inspection reports. Clearly, these reports, if available prior to the Court's decision on Plaintiff's Summary Judgment Motion, would have raised material issues of fact as to the proper disbursement of funds by BOA,

which would have required the parties to conduct discovery. Similarly, because the inspection reports reveal that BOA had unique knowledge regarding the correct percentage of completion of construction on the Project, this Court would likely have denied Plaintiff's Motion to Dismiss and found issues of facts as to whether a fiduciary relationship between Westheimer and the bank existed. As such, the Court's prior Order should be vacated.

## LEGAL ARGUMENT

## POINT I

## WESTHEIMER SATISFIES THE STANDARD UNDER FED. R. CIV. P. 60(B)(2) FOR RELIEF FROM AN ORDER ON THE BASIS OF NEWLY DISCOVERED EVIDENCE.

Fed. R. Civ. P. 60(b) provides, in relevant part, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ... or (6) any other reason justifying relief from the operation of the judgment." The standard under Fed. R. Civ. P. 60(b)(2) "requires that the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." Compass Tech., Inc. v. Tseng Labs., Inc., 71 F.3d 1125, 1130 (3d Cir. 1995) (citing Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991)).

Initially, the inspection reports could not have been discovered through due diligence before this Court entered its February 28, 2014 Order dismissing Westheimer's Counterclaims and granting BOA summary judgment on its Complaint, or within twenty-eight days after entry of such judgment under Fed. R.

Civ. P. 59(b). Throughout the construction process and well before BOA filed its Complaint, Westheimer repeatedly requested copies of BOA's inspection reports. Despite Westheimer's frequent requests, BOA refused to relinquish these reports. Additionally, once litigation had commenced, Westheimer's counsel requested that BOA provide the inspection reports, but once again, BOA refused. Before Westheimer was able to formally request copies of the reports in discovery in this case, this Court granted summary judgment and dismissed his Counterclaims. On October 15, 2014, Westheimer finally received copies of the BOA reports from one of the defendants in his action against his professionals and contractors in the Superior Court of New Jersey, Law Division, Mercer County.

> **A.   The Inspection Reports Are Material To Westheimer's Counterclaims And Would Have Likely Prevented This Court From Dismissing Same.**

The crux of this Court's February 28, 2014 Opinion was that BOA had no duty to Westheimer with regard to the performance of the inspections and draw procedure. Although under New Jersey law there is a general presumption that the relationship between a lender and a borrower is conducted at arm's length, a fiduciary relationship may arise where one of the parties "expressly reposes a trust or confidence in the other or because of the circumstances of the transaction and the parties' relationship 'such a trust or confidence is . . . necessarily implied.'"

United Jersey Bank v. Kensey, 306 N.J. Super. 540, 553 (App. Div. 1997) (citations omitted).  In this regard, the Kensey court recognized "the growing trend to impose a duty to disclose in many circumstances in which silence historically sufficed." Id. at 553-54 (citations omitted). Indeed, recognizing this trend, under the Restatement (Second) of Torts §551 (1977 & Supp. 1977), a duty is imposed upon a party to an agreement to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake . . . and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." Kensey, 306 N.J. Super. at 554 (quoting Comment 1 to Restatement (Second) of Torts §551, Subsection (2)).

        In its February 28, 2014 Opinion, this Court found that because under the Agreement BOA was not required "to monitor the progress or quality of the construction, release the findings of any inspections to Westheimer, or withhold any Loan proceeds upon any finding of deficiency, its conduct fell short of demonstrating any egregious conduct necessary to impose on it a fiduciary duty." (Exhibit E, Opinion, p. 10.) However, while the Court found that BOA was not required to withhold any Loan proceeds upon any finding of "deficiency", the deficiency referred to by the Court is with the construction itself. Unknown to the

Court and Westheimer, the inspection reports reveal that BOA prematurely paid out the Loan proceeds in violation of the terms of its Agreement with Westheimer. BOA was required under Article 2.2(d) of the Agreement to withhold Loan proceeds if "the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance". (Exhibit A, Agreement, Article 2.2(d).) The Agreement provides ""[i]n that event, Owner **will** fund such excess cost prior to any disbursement or further disbursement being made by LENDER". (Ibid.) (emphasis added).

In its first inspection report, LCN noted only $383,254.52 in completed work on the Project, rather than the $1,067,123 actually paid out by Westheimer. (Exhibit F, September 16, 2008, pages Bates-stamped CHPAVING 118-119.) Accordingly, BOA had knowledge that, with the construction in place as of September 16, 2008, the most that Westheimer would be able to fund toward the Project costs would be $1,883,254.52, or $683,868.48 less than the $2,567,123 in required "Construction Costs." Although Article 2.2(d) of the Agreement required Westheimer to fund the "Construction Cost Deficiency" needed to complete construction prior to any disbursement by BOA, on or about September 24, 2008, BOA approved and paid Westheimer's first disbursement request of $97,753.21. (Exhibit H, Advance Approval/Sign Off, dated September 24, 2008, page Bates-

stamped 92; Exhibit I, Cost Breakdown Detail, dated September 24, 2008, page Bates-stamped CHPAVING 107.) By failing to comply with the terms of the Agreement and demanding that Westheimer fund the excess amount to complete the Project before issuing its September 24, 2008 payment, BOA ensured that Westheimer could not complete the Project on time and would default under the Agreement.

Further, as Westheimer had actually paid out the $1,067,123 in "Cost Proceeds" anticipated by the Agreement, LCN had inspected the Project, and BOA began paying out the Loan proceeds without demanding he pay any "Construction Cost Deficiency" Westheimer understandably believed that he had funded 41.57% toward the total costs of the Project. That BOA had the unique knowledge that only 14.93% of the Project had been funded despite Westheimer's $1,067,123 investment and nonetheless began paying out on the Loan is precisely the type of "special circumstance[] . . . where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and relying on the bank [so] to counsel and inform him.'" Kensey, supra, 306 N.J. Super. at 554 (quoting Parker v. Columbia Bank, 91 Md. App. 346, 369, 604 A.2d 521, 532-33 (Md. Ct. App.) (quoting Klein v. First Edina Nat'l Bank, 293 Minn. 418, 422 196 N.W.2d 619, 623 (1972)).

As the factors under <u>Fed. R. Civ. P.</u> 60(b) have been satisfied as to Westheimer's Counterclaims, Westheimer should be relieved from that part of the February 28, 2014 Order granting Plaintiff's Motion to Dismiss.

**B.    The Inspection Reports Are Material To Westheimer's Defense To The Foreclosure Complaint And Would Have Likely Prevented Entry Of Summary Judgment.**

Had Westheimer been able to submit the inspection reports to this Court in opposition to BOA's Summary Judgment Motion, it is likely that the Court would not have dismissed his Counterclaim. Under New Jersey law, to foreclose on a mortgage, a lender must establish that: (1) the mortgage and the loan documents are valid; (2) the mortgage loan is in default; and (3) it has a contractual right to foreclose in light of the default. <u>Great Falls Bank v. Pardo</u>, 263 N.J. Super. 388 (Ch. Div. 1993) <u>aff'd</u>, 273 N.J. Super. 542 (App. Div. 1994). While "[t]he only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises," <u>Pardo</u>, 263 N.J. Super. at 394, under New Jersey law, the borrower is entitled to bring meritorious counterclaims that are germane to the foreclosure action. <u>See</u> <u>N.J. Ct. R.</u> 4:64-5; Scott T. Tross, <u>New Jersey Foreclosure Law and Practice</u>, §1 at 162-165 (2001).

The Counterclaims brought by Westheimer, which are embodied in his

Affirmative Defenses, are clearly "germane" in that the claims and defenses directly arise from and relate to the mortgage upon which BOA seeks to foreclose. See Patetta v. Wells Fargo Bank, NA, 2010 WL 1931256, at *11 (D.N.J. May 13, 2010) (finding claims for fraud, NJCFA, unconscionability, unjust enrichment, and breach of contract "are each the sort of claims that have been deemed germane by courts [.]") (citing In re Mullarkey, 536 F.3d 215, 230 (3d Cir. 2008) (describing the doctrine as applicable where a plaintiff alleges that the mortgagee breached the parties' underlying agreement) (citation omitted).

The Agreement provided that "[c]onstruction of the Improvements will be completed no later than the end of the Construction Period, unless Borrower has requested an extension of the Construction Period . . . and Lender has approved such extension request." (Exhibit A, Agreement, Article 2.1(b); Article 1.) As construction was not completed by March 31, 2010 and Westheimer did not receive an extension of the Construction Period, the Court found that he failed to perform his obligations under the terms of the Loan and is now in default. (Exhibit E, Opinion, p. 19.)

As set forth in Point I(A), supra, BOA breached Article 2.2(d) of the Agreement on or about September 24, 2008 when it approved and paid Westheimer's first disbursement request when there was only $383,254.52 in

completed work on the Project, resulting in a $683,868.48 deficiency.  By failing to demand that Westheimer fund the excess amount to complete the Project before issuing this payment as required under the Agreement, BOA ensured that Westheimer could not complete the Project on time and would default under the Agreement. The inspection reports revealing Plaintiff's breach would have changed the Court's decision on the Summary Judgment Motion, as the causes of action in Westheimer's Counterclaim are "germane" under applicable case law. See Patetta, supra, 2010 WL 1931256, at *11; In re Mullarkey, supra, 536 F.3d at 230.

As the factors under Fed. R. Civ. P. 60(b) have been satisfied as to Plaintiff's foreclosure Complaint, Westheimer should also be relieved from that part of the February 28, 2014 Order granting Summary Judgment in favor of Plaintiff.

## CONCLUSION

For all the foregoing reasons, Defendant, Kirby Westheimer, respectfully requests an Order pursuant to Fed. R. Civ. P. 60(b)(2) for relief from this Court's February 28, 2014 Order entering Summary Judgment in favor of Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation, and granting Plaintiff's Motion to Dismiss and dismissing Defendant's Counterclaims.

**LUM, DRASCO & POSITAN LLC**
Attorneys for Defendant, Kirby
Westheimer

By: /s/ Paul A. Sandars, III
PAUL A. SANDARS, III

DATED: August 14, 2015

517976                                    23